Well, good morning, everybody. Welcome to the hearing of the National Court of Appeals for the 4th Circuit here at Central University in the Bronx. We are so happy to be able to be here this morning with all of you. It's an interesting morning that I bring with me today. I think I've completed the part of the board. We'll begin with our first case. 23-4-6-3-4 United States v. Wright Mr. Wellman Good morning, your honors. Mr. Wright was sentenced in a conspiracy case last year involving an indictment with eight defendants on it. Mr. Wright was guilty to the object of the conspiracy involving distribution of fentanyl. At sentencing, Mr. Wright's sentencing level was enhanced by the application of an aggravated law enhancement for a managerial role. The pre-sentence report and the government and ultimately Judge Biggs agreed that a three-point enhancement would be appropriate and that the scope of criminal activity was widespread or extensive, whereas I argued that a two-point enhancement would be appropriate and that the criminal activity involved was small-scale. How many participants did the district court find were involved? I don't believe that the district court made a specific finding as to the exact number of participants or comments. My reading of the record, it seems that the district court perhaps found that an appellant conspired with, quote, Brownfield, Ferguson, and McDougald. I'm not sure if I pronounced that correctly. Is this finding clearly erroneous or are you arguing that the finding, if there was a finding, was not clearly erroneous but instead that the enhancement just shouldn't apply? I'm arguing that any finding that there were five involved participants in my client's criminal activity was clearly erroneous. Okay. And based on what I read, if you count your client, then that would be five or more participants, but your argument is they didn't participate in the criminal activity to which an appellant pled guilty, correct? Not quite, Your Honor. I believe we can't dispute that my client pled guilty under a Pinkerton conspiracy liability sort of sphere of activity. However, the sentencing guidelines have not adopted that as far as sentencing liability as opposed to criminal liability. You know, you need to clarify first how the guidelines should be interpreted because I think you are relying quite a bit on the commentary. There's some confusion as to what is expected commentary. Well, if you find the guidelines to be unambiguous and unambiguous. So that's kind of where you've got to get us at least in terms of the law, which of those directions may go in. The guidelines have been quite unclear, unambiguous. At least on the table, we don't need to look at the commentary. But you want us to look at commentary. Is that correct? Your Honor, regarding the 3B1.1, I don't think it's necessary at all for us to look at the commentary. Because it's not ambiguous, right? I don't believe it is ambiguous, ambiguous at all. Pretty clearly as to talking about criminal activity only. I think that language is, you know, if we look at the 3B1.1B, if the defendant was a manager or supervisor, any criminal activity involved five or more participants. So the commentary is what models everything, because then it starts talking about what is a participant. If we leave out the commentary, which again, I don't think there's really any ambiguity there, we're talking about criminal activity. And that, once we go back to the... Criminal activity is pretty broad. That's the problem. I would think that you're saying it's unambiguous. It's the determination of criminal activity is not necessarily participants or otherwise a sensible part of that 3B guideline. It's a question of criminal activity. And when we turn it back, if we don't look at the commentary, there's another section in there in the guideline that talks about joint-type criminal activity. Why does that not reflect here? To make it clear that it is a very broad interpretation that we put up today. Your Honor, that language, criminal activity, and if we go to the beginning of the Relative Conduct Guideline 1B1.3, and there you see it again, the discussion of which criminal activity is a defendant going to be liable for in sentencing. I think some of the fuzziness is that the commentary leaves out... In the sense of criminal activity which is convicted as a sentencing aspect of it. Sentencing is different. And the court, at least the cases I pointed to, do you necessarily have to be directly involved with the other activities here? In order for it to be part of conspiracy, if it is part of the overall scheme of the slogan? I think it has, in order to be liable in sentencing sense, it has to qualify as relevant conduct. That's the issue. Doesn't our recent case, Evan's case, help you? I read it. It was one that I had not cited. I took a look at it. I think it was probably asked. To me, when I took a look at it, I found it to be generally in support or to help me in terms of... Right, I think it might too. Because there we said the district court must make particularized findings under 1B1.3 when the criminal activity supporting the sentence is a conspiracy. Which sounds like what we have here. And the district court... Did the district court make particularized findings? Not as to that 1B1.3 relevant conduct analysis. It's sort of where you and I started. It's hard to tell if the district court made a finding or not about what the criminal activity might have been. And who would have been involved. Your Honor, I agree. I mean, you can just stop it. I agree. As far as I'm concerned. So let me ask you about that. So where does that leave us? I mean, is your argument that the record is insufficient as a matter of law enforcement? Or is your argument that whether or not there's evidence in the record to support it? The district court has a lot of evidence to support it. Your Honor, my argument would be that the record does not support any finding that this criminal activity, relevant conduct, criminal activity, included five or more participants. So what's the remedy? They gave you a remand record, not a record. What's the reason for the lack of evidence? Your Honor, what I'm asking for is a remand or resentencing on me. With the recognition that the record is something that's not... So we're not going to have another via fiat or a government attempt to... That's right. So there's a deadline for this year. As far as I'm concerned, it's 3B1. If we look at evidence, is evidence limited to particular findings for 1B1.3 and not 3B1.1? Well, Your Honor, the 1B1.3, the assessment as to relevant conduct, it applies right there in 1B1.3A to adjustments, I guess, in Chapter 3. So by the plain text of the guidelines, the assessment of does the aggravated role in Chapter 3 apply is undertaken as a part of relevant conduct. My question is, Your Honor, are we looking at the criminal activity definition as it exists under 3B1.1? And that being the case, evidence did not address 3B1.1. It addressed the 1B1.3. So how is that informed or controlled out in the seating of this case? Your Honor, I take it that we're sort of distinguishing here between the drug quantity calculation, which we see over and over again, where it is limited by relevant conduct consideration. And that is something that's taken up in 1B1.3 and it's in the commentary and so forth. But the fact that Chapter 3 enhancements, that's not part of the assessment of drug quantity. I'm just trying to make sure we're clear. It seems to me, question me, whether this 3B1.1 counts participants only which you contend the defendant was directly aware of. But to get that answer, we have to determine what does the term criminal activity mean under that particular guideline. And it says it pretty clear, at least in my perspective. But then you turn to evidence which deals with the Tinker House findings under a different guideline of 1B1.3. Your Honor, I would state that the criminal definition of criminal activity is used in one place in the guidelines and in other places in the guidelines. It should be consistent. There's no reason why in 1B1.3 the defendant's criminal activity is defined in terms of relevant conduct. Your Honor, I'm just asking that one because they are saying why is it that in 1B1.3 the words don't be undertaken is added to the term criminal activity. So it reads don't be undertaken activities as opposed to criminal activity in the other guidelines. What is the significance of that? Or is that just a purposeful language? Well, I don't know that any language is strictly superfluous. But, Your Honor, in the circumstance where it is modifying criminal activity in 1B1.3, it is necessary there in 1B1.3 to distinguish the jointly undertaken criminal activity from the singly undertaken activity that's addressed in A1A as opposed to A1B. Whereas that modifier is not necessary in the aggravated role enhancement language because by definition we're talking about some type of jointly undertaken criminal activity. Can I ask you about the different ways in which you can make out the significance? In fact, I have a follow-up question about the number of participants. ... That's not the only way that we can prove the whole three-point message, but we also show that the activity is otherwise extensive. Is there any evidence on that point? Your Honor, I would argue that the government is bound by the information presented in the pre-sentence report as to the offense conduct, the offense-relevant conduct. It is a factual assessment as to whether the facts as alleged qualify under Fourth Circuit case law as otherwise extensive. But the district court didn't find that in the sentencing, correct? Not to my detection. That's another thing that perhaps the remand of the district court could look at. I think the district court certainly should have the opportunity to look at that. I don't think that's due to the number of participants because that's a number. None at this time. I appreciate your questions. Thank you very much. Thank you, Your Honor. May it please the court, Julie Niemeyer for the United States. There's two different bases on which this court can affirm the district court. First, there is simply no indication in the guidelines, in the text or commentary that would support this limited interpretation that Mr. Bright suggests of the term criminal activity. And without any limiting characterization of that term, the criminal activity should be evaluated in a broad fashion. How do you state a reality of how we should view the guidelines in terms of commentary? As I said, I was wondering if you could talk to the police. The guidelines do not place any limits on the term criminal activity. If you look to section 3B1.1, there's two parts to a role enhancement. The court first has to evaluate what was the defendant's conduct? What type of role did he play? And then that has to be evaluated against the backdrop of what arena was the defendant operating? So, that's how these two guidelines work together. The aggravating role guideline and the mitigating role guideline. Absolutely not, Your Honor. Becky Evans clearly clarified that when we're looking at the relevant conduct to be attributed to the defendant, we have to follow those principles that are set forth in section 21. We have to look at what was jointly undertaken and what meets the criteria there. And those same principles inform the court's analysis of what role the defendant played. Those are other pieces. What role? Are we talking about an adjustment under Chapter 3? Yes. The enhancement is an adjustment, right? Yes. All right. Well, it says right in the guidelines that adjustments in Chapter 3 shall be determined on the basis of analysis. It's all the things in 1B1. Yes, absolutely. Which is what Evans was talking about. It doesn't apply. It certainly doesn't apply, Your Honor, because that's how we look at the defendant's conduct. The conduct is what makes up his role. So, when we're looking at Mr. Wright's role, we're only ascribing his conduct under relevant conduct principles to him. We can't look at his role and say somebody else's transaction should go into our analysis of his role. We're looking at his relevant conduct to determine what his role was. Yeah, I think he's the wrong group of people. You can't start a different definition of what his role was. Because his role is much more expansive than what Mr. Wright is the wrong one. Well, Your Honor, he was a major distributor in this conspiracy. There were six people that were charged... With fentanyl. Yes, Your Honor. There were other drugs involved, aren't you? That doesn't exclude it. Right, Your Honor. But in this conspiracy, six people were charged with fentanyl and two were charged with methamphetamine. So, here, there were six people that were involved with fentanyl. And Mr. Wright... And that includes five if you count... There was McDougal, Wright, Bush, Brown, Ferguson, who works directly under Wright, and also Jones. And where did the district courts say that? So, Your Honor, at J58, kind of at the outset of the court's discussion, after Mr. Wellman had said Mr. Marks, the court said, I've got Brown, Diaz, Ferguson, and McDougal. Right. And you mentioned there's several other people there. Right. There were a couple others that he wasn't directly... I'm trying to find where the court defined the scope of the criminal activity. Well, there was that statement made at J58. And then there were additional findings, kind of the concluding remarks made by the court at J62. The court said, I don't think the law supports what you're asking me to do. I think what we have here, this gentleman had a fairly significant role in the conspiracy. He may know everybody that touched those drugs, or everybody who distributed them, but that is not a requirement. It was a correct statement of the law. Why was there not either a number or a quantity? Well, Your Honor, because there were five individuals that were clearly in the court's mind there. There was Mr. Ferguson, who he directly supervised. There was McDougal, who Mr. Wright had most of his transactions with in the record. There was Mr. Brown, who in a factual basis was identified as someone that Mr. Wright directed to distribute fentanyl to McDougal and or the CI because he wasn't available. And then there's Diaz. And she had purchased fentanyl or heroin. Do you have the name of the client for me? No, Your Honor. So that particular defendant had also made a purchase from Mr. Wright in November of 2021. Clearly within the scope of that time frame of the conspiracy. And so there's five individuals right there that are all supported by evidence in the record. Making that finding not clearly their own. Even if, though, we had not had five individuals, the evidence in the record would support an otherwise extensive finding as well. But the court, the district court didn't make that finding. No, Your Honor. No. Did you ask, did the government ask the district court to make that finding? Did the government even argue that attempt? I don't know if that was explicitly addressed, Your Honor. I don't see those words. The primary argument was just that this is a. The primary argument, but I don't see those words anywhere in that sentencing hearing from the government. But I might be wrong. Oh, in the sentencing. I think it was the primary point in that memorandum was that there does not need to be a minimum number of persons. Right. I know that was the primary point. My question was, did the government ever argue this? I don't know what the language is. Below that sentence. Otherwise extensive. I don't think they did, Your Honor. Okay. No. I didn't think so either. Five or more people that's a day in 61. They're criminally active and involve five or more. And some rights and pay fall that whether a particular defendant needs to be involved with five or more books. It's not a requirement. There does not need to be direct involvement with those five people. But here there's clearly evidence that there were five people involved. Indeed, there were more people involved. Five people involved. Five people involved. Yes, Your Honor. I mean, they considered to be involved eight or six. But we have five individuals identified by the district court in the record as having been involved. And just to go back to Your Honor's point about the evidence case, I just think it's really important to frame this issue in terms of both the conduct of the defendant and this stage on which the defendant is operating. The conduct of the defendant, the government would never articulate that he should be attributed anything that was not authorized by Chapter 1 of the Guidelines. The relevant conduct attributed to the defendant is what is used to evaluate his action, his role in the conspiracy. But the broader stage on which the defendant is operating is the criminal activity as articulated in the Guidelines. And we know that that is consistent with what is in the Mitigating Rule Guidelines. The same phrase is used in that guideline. The defendant's role analyzed against the overall criminal activity, the size of the organization. If that role is minimal, then they get the Mitigating Adjustment. So, if Mr. Wright's theory that the role has to be evaluated in terms of only the people he had transactions with, that would make the Mitigating Rule Guidelines superfluous. Because, of course, if the defendant's role was minimal, let's say he had transactions with one other individual, okay, that wouldn't look minimal because we can only look at his little universe. The Guidelines tell us to look at the entire criminal activity to determine whether his role was minimal. And, similarly, here in the Aggravating Rule Guidelines, we have to look to the whole criminal activity to determine whether the role was more major. And I think that's... Well, Your Honor, that ties back to what I was saying about how the defendant's conduct has to be evaluated in terms of Chapter 1, Relevant Conduct Guidelines. We're not going to ascribe to the defendant anything that is not appropriate under Chapter 1. All of his relevant conduct goes into what was his role. And we've seen that in other cases, too. But then it also speaks to Adjustment in Chapter 3. Absolutely, Your Honor. Which I thought we agreed that Enhancement is an Adjustment in Chapter 3. Your Honor, I have to admit, the distinction between an Enhancement and an Adjustment is crazy at this time. Right, I'm saying there is no distinction. An Enhancement is an Adjustment. Okay, yes, Your Honor. Yes. And that Enhancement is based on the defendant's conduct. The defendant's conduct is evaluated in terms of the Guidelines, in terms of the criminal activity as a whole. The activity as a whole is the broader criminal activity, either a conspiracy or other enterprise in the case of conspiracy. Before the District Court turned to this issue of managerial liability, we made a point of expecting drug fines. Yes, Your Honor. Yes. We found that the crime was accountable for $161,000 plus for an offender. In doing so, the court said that the crime's relevant conduct only included those transactions that were unfeasible and informal in the person or system. So, why isn't that the same relevant conduct expected by managerial enhancement? If that's the case, then we've got three people nowhere near the five million. Well, I think the court almost always used kind of a conservative approach to ascribing drug fines. And so, the transactions where McDougal was purchasing from Brown and the direction of the right, I don't believe that went into the substance we want. But it certainly could appropriate findings. But here, the PSR went with the findings that were well-documented by the FBI. And I think that was the sound strategy. I'm also struck by the fact that the District Court was very careful in that analysis there. But I'll tell you what. The definition of what was expected was that McDougal was making a general comment. So, he kept characterizing his findings. But I think that's only the beginning of the story. Well, yes, Your Honor. Yeah, well, it's important to remember that here are those actual goals, but not in his speech. So, Mr. Bright was not disputing that he had a supervisory role.  So, the only dispute was over the number of participants. Yes, Your Honor. The number of participants. And I think the court, by its introductory remarks regarding the five people being involved in fentanyl and the discussion of this being a large conspiracy, was convinced from the outset that that numerosity requirement had been met. If we were to disagree with you on five of your statements, I think we'd ask you all to talk about whether or not you stand to be considered harmless in the context of this case. The number of participants is not quite accurate. You don't make that up? No, Your Honor. So, either you went on the merits of it, or you didn't. I agree with that, Your Honor. If there are no further questions, the government would ask this court to adjourn. Thank you very much. Yes, Your Honor. I just sort of addressed, and I was somewhat, I think the court's initial question was sort of, did the judge decide how many participants there were? And I said, no. And the reason for that is because when I look at the judge's comments on Joint Appendix page 58, where she says, I've got Brown, Diaz, Ferguson, McDougald. I agree with Your Honor that, you know, these are comments during my own argument, where she's asking, where the judge begs and asking me, well, what about this? What about this? And I'm responding. To me, that is, you know, never, I looked at that. I never considered that to be a fact. And I don't think Your Honors should either. As for, so in that regard, the judge may turn it back to you. Yes, Your Honor, I pointed out that in the pleadings, pre-sentencing pleadings, my objections that I filed, pleading on the objections of position picker, that we were disputing any Mr. Bright's relationship or interactions with either Mr. Brown or Ms. Diaz, both of them. And I pointed that out to the judge immediately when she put their names up. And to be fair to both the parties and the district court, nobody had been a bit of evidence at that time, at the time of sentencing, correct? I don't believe so, Your Honor. Right. The only other thing. What is your response to Nick Neumeier's argument that your reading here would make the mitigating role guidelines superfluous? Your Honor, I don't see it. I think each case stands on its own relevant conducts. Part of the way that these guidelines work and the idea of relevant conduct is that sometimes relevant conduct is going to be greater than the criminal offense. And sometimes it's going to be more narrow than the criminal offense. And that's going to affect the enhancements for the, we start from the homeland of relevant conduct. I don't think that we can say with a blanket statement that, oh, that means in every single case somehow there's going to be a limitation on the number of participants. And most of the time it's the government that is benefiting from the fact that the guidelines aren't addressing offense specific conduct. They're addressing not offensive conviction conduct. They are addressing offense conduct overall. And most of the time it's the government that's benefiting from that. And I just go back to the case that I referenced a couple of times in my briefing, which is Phelps. That was not a conspiracy conviction in 1990. That was not a conspiracy conviction. It was a distribution conviction. How significant do you view Phelps in this case? Is that a case that has a dispositive impact on us in terms of outcome? Your Honor, I think Evans clarified where we are as far as their views.  I have not, Your Honor. Give us a 20 day limit. I did not. Well, I reviewed Evans following seeing inside of them that he covered. I think it's significant insofar as it clarifies what the court, not just here but everywhere, has been saying for years and years and years. Which is that criminal liability under Pinkerton and sentencing liability under our guidelines are two different things. And the government wants to carve out some kind of exception for the aggravating load. And the defense, Mr. Bright and myself, dispute that there should be a part out there. And I think Phelps pretty clearly tells the court that relevant conduct matters as to the number of participants. Not just the law itself. So is it your view that this conduct must be conduct that is directly involved and directly related to them? My view would be that it must fall within the relevant conduct guideline of 1B.1.3. Do you understand my question? Is it your view that the conduct must be conduct that is directly related to them? Yes, Your Honor. It cannot go outside of that. It's not broad in terms of the scope of it. And deal with conduct that might be within the scope of the conspiracy but which is not directly related. It cannot be that. Our assertion is that it should not and cannot go beyond what qualifies as my client's relevant conduct as to jointly undertaking a criminal act. Did you know of any case that says it must be conduct that must be directly relevant to what the defendant is involved in? No, Your Honor. And this is the first time we've heard such a thing. Your Honor, I'd be... I hope I'm making a legitimate and non-frivolous argument. But certainly, Your Honor, I was struggling to find case law. We've asked around in terms of how it's going to play in the commentary guidelines. And what is it that we've really got in terms of criminal activity and scope is what we're dealing with here. And while in terms of what a person is actually convicted of, there's one thing that you can send us for and the guidelines can be broader. And there is some... I think it really comes down to... We hold such a thing that you've got... This court judge has basically got to enumerate what he was directly involved in. Only those things can count for the purpose of sentencing. Is that your position? That's what I'm asking. That those things, those individuals he dealt with directly, must be the ones for which they can count for purposes of sentencing. Our position is that the sentencing judge must go through the relevant conduct process as to the scope of the jointly undertaken criminal activity. That the judge makes the findings, what did the defendant do, and how many participants were involved in that. I just want to ask you this. If the judge does it, can that include activity for which that defendant was not directly involved? Your Honor, if it does not, if it was not a part of the... In furtherance of the criminal activity or reasonably foreseeable, in connection with the activity, then no, it should not be considered. Maybe I'm saying that. I'm not sure. I do. Because neither, as you articulate, there are three individuals this defendant directly worked with and dealt with. I'm saying that's your belief, that's what you count on. Not this broad group of people who were part of the overall scheme of how things were done. Is that your argument? Correct, Your Honor. Has any court held such a thing for us? I am unaware of... I'm certainly aware of cases that say that relevant conduct can be greater than conviction offense. Seems like all of them. All of them seem to be greater than... And I would argue that the same can be true going the other way as well. And right now, and perhaps that's what Evans helps us out with the most, and our argument would be that this should not just be one-way traffic. That the government gets all the benefit from the fact that it's not... The sentencing guidelines aren't just limited to offense of conviction conduct. It goes the other way, the government gets to say, Oh, no, no, offense means just the entire conspiracy, and that's what was indicted, and that's that. And that's how it is. In the debate, you're just about to get rid of someone who's too guilty. Go back to the sentencing. I suppose, we did it in 897, we did some of those sentences. Your Honor, every month matters to our defense, to our clients. Thank you, Your Honor. Thank you, Mr. Wallman. I know you were fore-appointed, and for the students, I want to explain what that means. Mr. Wallman, you've been publicly appointed by the Penitentiary. You've been elected by the court. You've been appointed by the Circuit Court, by the Supreme Court. You've been appointed for a criminal offense that you could not otherwise afford to receive by the counsel. You've been part of our criminal justice system. You could not operate our court or, frankly, the justice system at all. Without words, we are wanting to undertake this challenging work. And you've got to find out on behalf of Mr. Barclay's team, as he wanted to do that for you. Thank you, Your Honor. And Ms. Neumeyer, thank you for your excellent advocacy on behalf of the United States.
judges: Albert Diaz, James Andrew Wynn, Stephanie D. Thacker